A03A1976. MOORE v. MACK.
(598 SE2d 525)

PHIPPS, Judge.

The Probate Court of Bulloch County granted John Mack's 2002 petition to set aside its 1998 order that discharged Orita Coney as administrator of James Coney's estate. Mossie Moore, as Orita Coney's guardian,[1] appealed to the superior court. On appeal to the superior court, the parties argued on cross-motions for summary judgment whether Mack's petition was time-barred. The superior court ruled in favor of Mack, and Moore appeals to this court. Because the record demonstrates that Mack's petition was time-barred, we reverse the superior court's order and remand the case to the superior

---

[1] The record indicates that Moore was appointed guardian of Orita Coney in 2000 or 2001.

court with instruction to remand the case to the probate court for proceedings consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant.[3]

In January 1996, Orita Coney's husband, James Coney, died intestate. In the Probate Court of Bulloch County, Orita Coney filed an application for letters of administration, identifying only their son and herself as heirs at law. The probate court appointed her as administrator on May 6, 1996. On Orita Coney's statement that she had completed all required duties and its finding that notice had been published as required by law, the probate court discharged her as administrator on February 4, 1998.

In April 2000, Mack discovered that the estate had been settled. He filed a "Petition To Determine Heirs" in the Superior Court of Bulloch County in September 2000, seeking an order establishing that he was James Coney's son and entitled to share in the estate. After a hearing, the court issued an order on November 30, 2001, granting Mack's petition under the doctrine of "virtual or equitable legitimation."[4]

On February 19, 2002, Mack filed a "Petition to Open Estate" in the Probate Court of Bulloch County. He claimed that Orita Coney had known of and recognized him as James Coney's son before the administration of the estate, that Orita Coney had known of his whereabouts, that Orita Coney had told him that she did not want the estate administered until after her death, that he had agreed to respect her wishes, and that, despite her representation to him, she had almost immediately administered his father's estate without naming him as an heir and without notifying him. Moore, as Orita Coney's guardian, answered Mack's petition, claiming, among other things, that Mack's petition was time-barred.

After a hearing on Mack's "Petition to Open Estate," the probate court determined that the petition was not time-barred and that Orita Coney's omission of Mack as an heir of the estate constituted "fraud, accident, or mistake." The probate court therefore ruled that the order discharging Orita Coney as administrator of the estate be set aside in accordance with OCGA § 9-11-60 (d). The probate court further ordered the estate opened and "properly administered" with Mack recognized as an heir at law.

---

[2] OCGA § 9-11-56 (c).

[3] See *Harris v. Johnson*, 257 Ga. App. 182 (570 SE2d 582) (2002).

[4] See *Prince v. Black*, 256 Ga. 79 (344 SE2d 411) (1986).

Moore, as guardian of Orita Coney, appealed to the superior court. Upon cross-motions for summary judgment, the parties argued, among other things, whether Mack's "Petition to Open Estate" was time-barred. The superior court ruled on that issue in favor of Mack and ultimately granted Mack's motion for summary judgment and denied Moore's. On appeal to this court, Moore contests those rulings by the superior court.

1. Moore contends that the superior court erred in determining that Mack's petition to set aside the order discharging Orita Coney as the administrator was not time-barred.

(a) Mack's "Petition to Open Estate" is properly treated as a motion to set aside judgment governed by OCGA § 9-11-60.[5] Subsection (f) of that Code section, which controls the time limits for bringing a motion to set aside a judgment, provides in part,

> A judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time. . . . In all other instances, all motions to set aside judgments shall be brought within three years from entry of the judgment complained of.

The judgment complained of in this case is the probate court's order discharging Orita Coney as administrator. It was entered February 4, 1998. Mack did not file his petition in probate court to set aside that judgment until February 19, 2002, more than three years later. Consequently, Mack's petition was untimely.

(b) Mack attempts to escape this result by arguing that Orita Coney's conduct amounted to fraud against him, and that, pursuant to OCGA § 9-3-96, the fraud tolled the three-year limitation period until he discovered it in April 2000. Mack argues that, because he filed his petition within three years of April 2000, it was timely.

Pursuant to OCGA § 9-3-96, "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." To toll a statute of limitation under this section, the following must be shown: (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) the plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.[6]

---

[5] See *Manley v. Jones*, 203 Ga. App. 173, 174 (416 SE2d 744) (1992).

[6] See *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980).

To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent.[7]

Mack alleges that Orita Coney's statement to him that she did not want her late husband's estate administered until after her death was false and intentionally misleading. But even so, among other things, Mack has not shown that Orita Coney's mere statement prevented him from subsequently inquiring about the status of the estate administration or that the statement eluded a subsequent investigation concerning the status of the estate. Nor has Mack shown that Orita Coney's remark hindered him from earlier seeking an order establishing that he was James Coney's son and entitled to share in the estate. Thus, even assuming that OCGA § 9-3-96 tolls the statute of limitation set forth in OCGA § 9-11-60,[8] Mack has not demonstrated the fraud contemplated by OCGA § 9-3-96.

(c) Moore also argues that Orita Coney's omission of his name as an heir on her filings with the probate court constituted "fraud upon the court" and that such conduct tolled the statute of limitation. Pretermitting whether "fraud upon the court" tolls the statute of limitation set forth in OCGA § 9-11-60,[9] Mack has not shown any "fraud upon the court."

At the time of James Coney's death, "[c]hildren born out of wedlock ha[d] no inheritable blood except that given to them by express law."[10] Pursuant to former OCGA § 53-4-4 (c) (1), an illegitimate child had no inheritance rights from his father under the Rules of Intestacy, unless "during the lifetime of the father," a court of competent jurisdiction either declared the child legitimate or otherwise established who the father of the child was; the father executed

---

[7] (Citation omitted.) *Federal Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 244 (2) (590 SE2d 224) (2003).

[8] See *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993) (subsection (f) of OCGA § 9-11-60 "establishes the exclusive time limitation for when a judgment [may be] attacked by a motion to set aside. . . . It plainly provides that the only judgments subject to attack after more than three years are those which lack subject matter or personal jurisdiction."); *Rose v. Thorpe*, 240 Ga. App. 834 (525 SE2d 381) (1999).

[9] See *Murphy*, supra; *Rose*, supra; compare Rule 60 of Federal Rules of Civil Procedure (expressly providing that rule does not limit the power of a court to set aside a judgment based on fraud upon the court). But see OCGA § 53-7-53, formerly OCGA § 53-7-147.

[10] Former OCGA § 53-4-4 (a). During the 1996 legislative session, the Georgia legislature passed a new Probate Code to become effective January 1, 1998. Ga. L. 1996, p. 504. Estates of decedents who died before January 1, 1998, are governed by the prior substantive law. OCGA § 53-1-1. Former OCGA § 53-4-4 was recodified as OCGA § 53-2-3.

a sworn statement attesting to the parent-child relationship or signed the child's birth certificate; or clear and convincing evidence showed that the child was the child of the father and that the father intended for the child to share in the father's intestate estate as he would have if legitimate.[11]

Even if none of these methods of qualifying as an heir was met, a child born out of wedlock could still have inherited from his father "if evidence of the presumption of paternity . . . is filed with the court before which proceedings on the estate shall be pending and the presumption is not overcome to the satisfaction of the trier of fact by clear and convincing evidence."[12] A rebuttable presumption of paternity existed upon genetic testing establishing 97 percent probability of paternity.[13]

It is undisputed that Mack's efforts to procure an order establishing paternity were not made during the father's life. There was no evidence of paternity filed with the probate court before or during the pendency of the administration of James Coney's estate. Not until over three years after the probate court discharged Orita Coney as administrator did a court determine that, based on the doctrine of virtual or equitable legitimation, Mack was entitled to share in the estate. Thus, Mack has not shown that, during the time Orita Coney was administering her late husband's estate, he had "inheritable blood . . . given to [him] by express law." Without such, he has not shown any evidence that Orita Coney practiced fraud upon the court by not naming him as an heir at law.[14]

(d) Finally, citing OCGA § 53-4-30, Mack argues that, because his "Petition to Determine Heirs" was filed within three years of the probate court's order discharging Orita Coney as administrator, his petition to set aside the probate court judgment should be considered timely. But OCGA § 53-4-30 merely provides that a petition to determine who are entitled to take as heirs may be brought in either (1) the "probate court which has jurisdiction by virtue of a pending administration or which would have jurisdiction in the event of an administration of the estate," or (2) the superior court of the county wherein "the probate court having jurisdiction" is located. OCGA § 53-4-30 in no way establishes a procedure for obtaining relief from judgments.

---

[11] The last method is the doctrine of virtual or equitable legitimation, articulated by the Supreme Court of Georgia in *Prince*, supra, and subsequently codified as former OCGA § 53-4-4 (c) (1) (E). *Varner v. Sharp*, 219 Ga. App. 125, 126 (464 SE2d 388) (1995).

[12] Former OCGA § 53-4-4 (c) (2) (A).

[13] Former OCGA § 53-4-4 (c) (2) (B).

[14] See former OCGA § 53-4-4 (c) (1); see generally *Tolbert v. Whatley*, 223 Ga. App. 508, 511-512 (2) (478 SE2d 587) (1996).

OCGA § 9-11-60, however, sets forth the method to attack judgments. It delineates, "A judgment void on its face may be attacked in any court by any person. *In all other instances*, judgments shall be subject to attack . . . *only* in the court of rendition."[15] The Supreme Court of Georgia has expressly limited judgments void on their faces to "those judgments which lack either personal or subject matter jurisdiction."[16] Mack makes no argument that the judgment is void for lack of personal or subject matter jurisdiction. Thus, he could move to set aside the judgment of the probate court only in that court. Mack's "Petition to Determine Heirs" was filed in superior court and could not have constituted an attack on the probate court's judgment.[17]

2. Our ruling in Division 1 renders Moore's remaining contentions moot.

*Judgment reversed and case remanded with direction. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 24, 2004 —
RECONSIDERATION DENIED APRIL 8, 2004 —

*Wiseman, Blackburn & Futrell, James B. Blackburn, Jr., Peter A. Giusti*, for appellant.

*Hal Roach, Jr., Mandi C. Pilz, Stuart H. Patray*, for appellee.

John Mack, *pro se.*

---

[15] (Emphasis supplied.) OCGA § 9-11-60 (a), (b).

[16] *Murphy*, supra at 282.

[17] See *Utica Mut. Ins. Co. v. Mitchell*, 227 Ga. App. 830, 832 (490 SE2d 489) (1997).